## TAKICHI SAKATA, KENKICHI TOCHIMURA, HEI-HACHI AKABOSHI and CHOOJIRO YANAGI *v.* ARTHUR M. BROWN, HIGH SHERIFF OF THE TERRITORY OF HAWAII.

### ORIGINAL.

SUBMITTED OCTOBER 17, 1904.    DECIDED OCTOBER 31, 1904.

FREAR, C.J., HARTWELL AND HATCH, JJ.

LICENSES—*hack-drivers, knowledge of English language.*

> Under a statute requiring an officer to give to an applicant a cer-tificate that he is a "competent driver," if he, the officer, so finds upon examination, he can not refuse such certificate on the ground of the applicant's imperfect knowledge and understanding of the English language.

ID.

> Under a statute authorizing an officer to make "rules regulating licensed drivers and licensed vehicles, and the fares to be charged by them," the officer can not make a rule requiring the applicant for a license as a driver to "prove to the satisfaction of the compe-tent authorities that he is sufficiently conversant with the English language for the conduct of his business."

### OPINION OF THE COURT BY FREAR, C.J.

This is a submission upon agreed facts as a substitute for an application for a writ of mandamus to compel the high sheriff to give the plaintiffs certificates that they are competent drivers, they being applicants for licenses to carry passengers for hire, and such certificates being required by the statute as a prerequi-site to obtaining such licenses. The plaintiffs had applied to

the high sheriff for examination and the issuance of such certificates, but the latter, after examining them, refused to grant them such certificates solely "because of their imperfect understanding and rendering of the English language." It is admitted that the plaintiffs are otherwise qualified, and more particularly that they "understand the management of their horses and vehicles, understand the names of streets and prominent localities within the said district of Honolulu, and, in the Japanese translation, understand the 'regulations for carriages and rates of fare' now in force." The high sheriff relies upon Secs. 99 and 102 of Act 64 of the Laws of 1896, (P. L., Secs. 791, 794,) which is the general license act, and the 26th rule made under the authority conferred by said Sec. 102. These, as modified by the Organic Act, read as follows:

"Sec. 791. The high sheriff, or a sheriff, or deputy high sheriff, or an inspector appointed by the high sheriff for such purpose, shall, before any license is issued for any passenger vehicle, inspect the vehicle for which a license is requested, and the harness and the animals to be used therewith, and if he find the same to be in good serviceable condition he shall deliver to the applicant therefor, a certificate setting forth such fact, and the capacity of the vehicle. Such officer shall also examine any applicant for a driver's license, and if he find such applicant to be a competent driver he shall give him a certificate to that effect. No license shall be issued to any driver or for any passenger vehicle until the receipt by the treasurer of such certificate."

"Sec. 794. The treasurer may, from time to time, make rules regulating licensed drivers and licensed vehicles, and the fares to be charged by them, which rules shall be published in some newspaper or newspapers, and shall then have the force and effect of law."

"26th. Every hack-driver, before being licensed as such, must prove to the satisfaction of the competent authorities that he is sufficiently conversant with the English language for the conduct of his business, and well acquainted with streets and localities in and around Honolulu."

Doubtless the business of carrying passengers for hire is one for the exercise of which a license may be required, and one

which may properly be subjected to reasonable regulations under the police power. The extent to which such regulations may lawfully go has often been the subject of discussion in this jurisdiction, and it is unnecessary to go over the ground again in the present case. See particularly *Tai Kee v. Minister,* 11 Haw 57, and 12 Haw. 164, (lodging houses), and *Re Licenses,* 7 Haw. 771, (licenses in general); also *The King v. Tong Lee,* 4 Haw. 335; *Rep. v. Kum Lee,* 10 Haw. 491, and *Rep. v. Ching Geung,* 11 Haw. 667, (laundries); and *Bradley v. Thurston,* 7 Haw. 523, (intoxicating liquors). The only instance, so far as we know, in which a language test has been attempted was in the case of *The King v. Lau Kiu,* 7 Haw. 489. In that case the court held void an act of the legislature which prescribed that no wholesale or retail license should be granted to any person except upon the express condition that he should at all times keep full, true and correct books of account of all business transacted by him in connection with the licensed business, in the English, Hawaiian, or some European language. We refer to these cases partly for the purpose of showing that even if a statute or regulation imposing a language test in cases of this kind would be constitutional, still it would be of such an extreme nature, or so close to the line of unconstitutionality that a statute claimed to go to that extent should not be so construed except in a clear case, or should not be extended by construction beyond its plain terms. See especially *Tai Kee v. Minister,* 11 Haw., at page 66. The propriety of this view is particularly obvious when, as in this case, an attempt is made to impose the test of a single language, even though that is the English language, in a city in which by far the larger portion of the population consists of those, namely, Hawaiians, Portuguese, Japanese and Chinese, who naturally speak other languages, many of whom can not speak the English language to any great extent, and most of whom might naturally desire to engage carriages having drivers of their own respective nationalities.

Turning now to the statutory provisions and the regulation

relied upon, and assuming that the finding by the high sheriff that the applicants had an "imperfect understanding and rendering of the English language," was a finding that (in the words of the regulation) they were not "sufficiently conversant with the English language for the conduct of their business," was he justified in refusing the certificates on that ground? The statute (Sec. 791, *supra*,) requires him to issue a certificate if he finds the applicant to be a "competent driver." It needs no argument to show that one may be a competent driver without having any knowledge whatever of the English language. In order to be a competent driver one need not be conversant with the language of a particular portion of the community in which he proposes to conduct his business. This being so, the high sheriff must be held, upon the facts set forth in the agreed case and in the absence of any showing to the contrary, that the plaintiffs were competent drivers. This provision of the statute does not itself impose a language test, nor does it authorize the high sheriff to impose one.

The other section of the statute (Sec. 794, *supra*), it is true, authorizes the treasurer to make rules, and provides that such rules, when published in the manner prescribed, shall have the force and effect of law, but the scope of such rules is confined to the regulation of "licensed drivers and licensed vehicles, and the fares to be charged by them." Taken literally, the statute, in so far as it authorizes rules in regard to drivers, confines them to drivers who are already licensed, and even if this provision should be more liberally construed so as to authorize rules in regard to preliminary examinations of applicants, such matters covered by such rules would have to be incidental to matters relating to drivers after they were licensed. This provision contemplates rules regulating the conduct of the business, and does not contemplate a rule of such an unusual or drastic character as that now in question, discriminating by a preliminary language test as to who might be drivers. The statute itself contemplates that those may be drivers who are competent to drive. See *St. Charles v. Nolle,* 51 Mo. 122; *St. Louis v. Grone,* 46 Mo. 574,

and *Collinsville v. Cole,* 78 Ill. 114, for instances in which ordinances or regulations in regard to vehicle licenses have been strictly construed.

The conclusion is that the high sheriff should issue the certificates in question.   Judgment accordingly.

*Atkinson, Judd* and *Mott-Smith* for plaintiffs.

*Lorrin Andrews,* Attorney General, for defendant.